The defendant in this case, Mosley Williams, seeks the suppression of evidence seized after his girlfriend consented to the search of an open bag in her own bedroom. The District Court granted that request as to the meth that was found in the bag, admonishing officers for failing to verify the girlfriend's authority to consent by, quote, clearing up ownership of the bag before the search. But that requirement ignores this circuit's liberal approach of allowing police to form impressions of apparent authority from context without conducting additional investigation for confirmation. To be clear, the government is not challenging the report and recommendation's factual findings. Rather, based on the undisputed facts in the to consent in light of the totality of the circumstances at the time of the search. And I'd like to focus on the three most compelling facts that were available to the officers. First, that they knew that Williams was a live-in boyfriend. Second, that they knew that the girlfriend's gun was in the bag. And third, that they knew Williams instructed the girlfriend to move the gun based on a recorded jail call. The fact that Wells and Williams were romantic cohabitants, and it may appear to do so on first glance. The 10th Circuit found that the girlfriend, who was the sole lessee in that case, lacked even apparent authority to consent to the boyfriend's suitcases in her apartment. Largely because she disclaimed ownership of the closed bags. I'd like to call the court's attention to another 10th Circuit case that Williams cites is essentially a silver bullet in this case. In the United States v. Bass, the 10th Circuit found that a girlfriend had apparent authority to consent to the search of a black zipper bag nearly identical to the one at issue here that was in her boyfriend's trailer almost entirely because she appeared to live there with him. Critically, the 10th Circuit distinguished its own decision in Salinas-Cano, describing it as a host-guest relationship, because the boyfriend in that case only slept with a girlfriend at her apartment a few nights of the week. And the court took that to mean that at least one of them desired his or her space and their privacy. However, the court explained that where romantic cohabitants live together on an ongoing basis, it's the quote type of intimate relationship closely akin to that of a husband and wife for purposes of assessing common authority. The court explained that's largely due to the significant sacrifice of individual privacy that is inherent in residing with someone. Thus, while romantic cohabitants can still have an expectation of privacy where one partner takes special steps to protect their effects from the scrutiny of the other, officers can otherwise reasonably believe that they each assumed the risk that she might or he might look into their effects for missing items or, as relevant in this case, to consent to a search. This court has indicated that it takes a quote more liberal approach than other circuits. And that line is in the Almeida-Perez case. It's distinguished specifically the DC circuit and the 10th circuit. However, as the Bass case makes clear, there is no circuit split where a living boyfriend or girlfriend, husband or wife consents to the search, at least where there's not some kind of dramatic signal that would suggest that one or the other had taken extraordinary steps to hide a container from their partner's ability to inspect. Well, counsel, what's the implication? I know it seems like it cuts both ways, the implication of the phone call direction from the defendant saying, talking about the thing, not describing what that was. It's been assumed that that was only the gun, but could the thing have been the bag in which there would have been an effort on the part of the defendant to put the bag in a position that was not open to someone else. You mean that because Williams had called and asked Wells to move that thing referring to the bag, that he then would give authority to consent to a search of the bag? Is that what you're asking? That it would not, that that was his effort to conceal the bag and its contents. Well, the report and recommendation, I think, took Detective Bain's interpretation of that thing to mean that it was the gun. So the report and recommendation treats it that way. And I think that that's confirmed by the girlfriend's response when she was confronted with the jail call when the officers arrived at her door. So when they first showed up, they asked, they confirmed that she was the sole SE of the apartment. And they asked if Williams resided there with her. And she confirmed both of those facts. And then they asked her if he kept a gun there. Her response was no, he did not. Then Detective Bain confronted her with a jail call without really getting into specifics, just alluding to the fact that the jail, that they had listened to the jail call and then asked her again. And she clarified that she had a gun that was registered to her inside the apartment. So I think based on her response to that question, it confirms that the thing referred to a gun. Did the government offer any other bases for justification of the search into the contents beyond consent? No, your honor. That was the sole basis. They were, Detective Bain explained that he was conducting a knock and talk, which this court has upheld in a variety of searches and apparent authority cases. And he was going to see if she would consent to a search, which he believed that she would because she had no prior convictions. And if she was unwilling to consent to a search, then he was planning on securing a search warrant, which he undoubtedly could have done based on the probable cause that he had to believe that a gun was inside the apartment. Well, wouldn't that have been the preferred route here once he acquired the gun, knowing there might be further incriminating evidence in the bag to simply get a warrant for the bag? That could have been a step, but I don't know that it's a preferred one because consent is an exception to the warrant requirement. And I think everything, basically all of the facts that the officers were confronted with suggested that Wells had authority to consent to the search of the bag. So it was a possible step, but it was not in any way necessary in this case. So what's your best case? You've listed a couple from other circuits. What's your best case from the existing 8th Circuit precedent that the live-in has the authority to consent to the bag, contents of the bag beyond what could be externally observed? So I think the Hinkle case and the Amarillo together are the best cases for the government's position. Both of those involved cohabitants consenting to the search of containers that were locked and that officers knew, explicitly knew, belonged to the non-consenting party. And despite that fact, in both of these cases, the court held that officers were reasonable in relying on, in one case, a wife's apparent authority and in another case, a plutonic cohabitant's apparent authority to consent to the search. I think that our facts here are far better than both of those cases because the bag's ownership was ambiguous. At the time of the search, the officers knew that Wells' gun, her property, was inside the bag. And I'd like to make one important point of clarification where both Mr. Williams and the magistrate judge considered facts that are true, but they weren't known to officers at the time. So both the report and recommendation of Williams attempt to diminish the fact that Wells' gun was in the bag because she later told officers that Williams was the only person who carried the gun. But at the time of the search, they didn't know that. All they knew was that Wells had a gun that she owned that was registered to her and that Williams sometimes carried that was inside of the bag. And I think it would be unreasonable for officers to have concluded that she couldn't go into the bag to retrieve her own personal property, which is what their understanding of the gun at the time. But the third fact that we've already discussed... Well, the gun itself is not, there's no issue about the admissibility of the gun, is there? That's not a part of... In this appeal, no, your honor, because the magistrate judge found that it was in plain view, so the officers could seize it on that basis. But the fact that Wells' personal property was inside the bag would suggest to officers that she had the authority to be able to go in and retrieve her own property, even if there was a container that was belonging to Mr. Williams. It would be unreasonable to assume that she couldn't access, somehow was prohibited from accessing her own personal property inside the container. So that was another signal to officers that she had authority to access the bag because her property was inside of it. The third point that we've discussed already a little bit is that Wells had permission from Williams to move the gun. I think properly interpreting the thing as the gun, officers had a recorded jail call in which Williams instructed Wells to move the gun, which further indicates that she had permission to access the bag's contents. And I think even if the court were to disagree with that interpretation, it certainly is a reasonable one. And that's all that officers had to have was a reasonable basis for relying on her consent. Does it matter that the... And I don't have the exact conversation in front of me right now, but my recollection is, and it may be an error, is that it was move the thing and forget about it. Does the and forget about it mean anything in this context? I don't think so, Judge Erickson, because once Williams had given Wells permission to access the contents of the bag, assuming that she didn't already have it, that opens up the risk. He assumes the risk that she would then turn the contents over to law enforcement. So once she has access to it, and it's her gun, and it's a messenger bag, which whether you call it a man bag or anything else, it's a messenger bag that's used by people of both genders, just at that point, there's just apparent authority, right? Absolutely. Absolutely, yes. I think that given that it's an objective, this court conducts objective review, I think that you can look at the picture that's in the reply brief, and as you just suggested, I think it's pretty clear that it's a unisex bag. But again, under the circuit's precedent, even if you assume that it was his bag, given the fact that her property was inside of it, and then he gave her permission, there's no question that officers at least could reasonably believe that she had the ability to access the contents. With that, I'll reserve the remainder of my time for rebuttal, unless there are any further questions at this point. I see none. Thank you, Mr. Bluestone. Mr. Margulis. Thank you, your honor. May it please the court, your honors. William Margulis for the appellee, Mosley Williams in this matter, and it's the appellee's position that the district court did not commit clear error when it made factual findings that Mr. Williams' girlfriend lacked apparent authority to consent to the search of the man bag, and its contents found in a bedroom that the two of them shared while living together in the apartment. Counsel, what difference does it make how the bag's described? What's the materiality of that? The materiality of that, judge, is that we have to look at the facts that the court found in the record, and what's important for the second issue that the court has to decide is whether it was reasonable for the officers at the time they conducted the search, based on the facts and information they had, to believe that Ms. Wells had apparent authority to search the bag. The district court found that the bag that Detective Bain had found who testified at the evidentiary hearing, and this was the only part of his testimony I believe that the district court found not to be credible, and the detective referred numerous times in his police report that it was a man bag, and he tried to backtrack on that testimony at the hearing, and as I indicated, the court found that to be not credible. He kept referring to it as a man bag because he believed it belonged to a man. He knew that Mosley Williams at that point in time, he already knew that he lived in the apartment with Ms. Wells, and obviously Ms. Wells was not a man, she was a woman. I think it's one of many factors that the court found that the officers knew at the time that they conducted the search, and I think if you go back to the very beginning of the entry into the apartment from the detectives, when the detectives arrived at the apartment, they had already conducted part of the investigation. They knew that the gun was used and carried and possessed by Mr. Williams. They had already listened to the phone call, they had conducted an investigation into an earlier kidnapping that they believed Mr. Williams was involved in. They had information that he carried a gun in that kidnapping, and then he instructed, as was discussed earlier, he instructed Ms. Wells to move the thing to the closet, which the detective, as Mr. Bluestone indicated, testified at the hearing that based on his experience, the thing referred to the gun, and if you read the police report, well, the police report, and the evidence is that at the time that they entered the apartment, they knew that, when I say they, I mean the detectives, they had information and there was no evidence, and the district court found that there was no evidence that Ms. Wells ever possessed or used or carried the gun, and when she was first confronted by the detectives with respect to the gun, she indicated that it was registered to her, but then when the detectives confronted her with the phone call, then she told the officers that the gun was used and carried and possessed by Mr. Williams, and that was before the search was ever conducted. Counsel, is there some conclusion on the part of the district court as to what was being investigated by the officers when they went to the apartment? Was it the full kidnapping or was it just the gun? Your Honor, I believe that they were investigating the kidnapping and the retrieval of the gun because the detective testified at the evidentiary hearing that they were, I believe, investigating a kidnapping that Mr. Williams was involved in. They were checking the court records and saw that Mr. Williams had a court date in St. Louis County on a probation revocation hearing, and they appeared in court, or the detectives showed up at the St. Louis County courthouse and arrested Mr. Williams in court. They searched his vehicle, and they did not locate the gun that they were looking for. Well, finding the gun, which was certainly relevant evidence to the kidnapping allegation, why wouldn't it be reasonable for them to have probable cause to search the remainder of the bag for other evidence that might be connected to the kidnapping? Your Honor, that's because the gun was seized in plain view, and that's what the court found, and I think everybody's in agreement on that. It's our position that based on the facts that the officers knew at that time, that it was not reasonable for them to believe that Ms. Wells had apparent authority to conduct a search of the rest of the bag. Also of note is that the... Is there any question in your mind that if they had stopped at the point of discovery of the gun and requested, went to a magistrate and requested a warrant for the bag and its contents, that they would be able to get it? That's a good question, Your Honor. Based on the information that they had, I don't think there was any reason to conduct a search of the rest of the contents. I don't think they had probable cause to search the rest of the bag for anything. I don't think there was any indication. I mean, they went to the apartment looking for the gun. They found the gun in plain view and they seized it. I don't think they had probable cause to search the apartment or the band bag for anything else based on their investigation up to that point. There was no information at that point that Mr. Williams might be possessing drugs or anybody or even Ms. Wells for that matter. They went there solely for the purpose of seizing the firearm. They found it in plain view and they seized it and the search should have ended at that point. What I was getting at a minute ago, Your Honors, before we got to that was with respect to the other contents of the bag, the drugs were not sitting open underneath the firearm. They were in, and this was, I think, another finding of the court. The drugs were actually in an opaque closed container, so to speak, containers being plastic bags, but they were opaque and they were closed containers. I think even if the court were to find that it was reasonable for the officers to believe that Ms. Wells had apparent consent to search the bag itself, I don't think there's any evidence that it would have been reasonable to think that she had authority to consent to open closed containers contained within the bag. There's a case that the government cites, well, before I get to that, I did want to state that the government makes the point that the property, the gun, belonged to Ms. Wells. Certainly, she could direct the officers to seize her own property from the bag, but the government can't have it both ways. For the purposes of the prosecution and the three counts that Mr. Williams is charged with, the government's position is that the gun belonged to Mr. Williams and he's charged with being a convicted felon in possession of a firearm, a 924C count, and a drug possession with intent to distribute counts. The government can't have it both ways. They can't argue that the gun was his for the purposes of the three counts and the indictment, but then take the position, oh, the gun was really Ms. Wells' gun to authorize her consent to search the bag. In U.S. v. Moran, which the government cites, blanket consent to search property from the owner extends to all items in the property not clearly belonging to someone else. The blanket consent, when Ms. Wells signed the consent form, the consent form was a general consent form authorizing the police to search generally throughout the apartment. It did not specifically mention the bag or any other items contained therein. It's our position that based on the facts that the officers had at that time, that the bag where the gun was seized clearly did belong to somebody else, and therefore, they needed further information at that point in order to determine whether they could conduct a further search of that bag. The court also found, I know the government makes the point that Ms. Wells had permission to move the gun based on the phone call with Mr. Williams at the jail, but the court found that based on that phone call that Ms. Wells seemed unaware that the gun was even located in the apartment until that phone call. And the fact that the gun was found in the bag and not in the closet or anywhere else suggests that Ms. Wells never touched or moved or did anything to follow up with respect to that firearm after the phone call. Counsel, is it in the record whose room or who slept in that room? Was that a shared bedroom or was that the bedroom of one or the other of the occupants? It was a shared bedroom, Your Honor, and I believe the court noted that there was actually, I think, photographs of Mr. Williams on the bookshelf. They see some other items in plain view, I think a scale and something else I can't remember off the top of my head, just some shelving in the bedroom, and I believe there was a photograph of Mr. Williams on that shelf. So the court did make a finding that it was a shared bedroom. If it's a shared bedroom, are we in a situation where you look at, when we look at the bag itself, and the three things we're supposed to consider are the mutual use of the bag, the function of that mutual use, I guess, joint access, and who has control over it. Now clearly, you know, access, she's got access to it. Clearly, she's got control over it because it's in her closet, it's mutually shared. So the whole thing turns on whether or not there was some mutual use of that bag. And based on just the mere finding that the officer describes it as a man bag, and that he thought, apparently, that it was not Ms. Wells' bag, that that alone is enough to say that there was no joint access, no mutual use of that bag. Control over that bag. Even though she was directed to move it around, and she says it's my gun that's in the bag. Judge, you may have lost me on that one, but I can tell you that the district court did make a specific finding that Ms. Wells did not, that there was no evidence presented at the evidentiary hearing that Ms. Wells had any mutual use or joint access or control over the bag. That was a factual finding made at the hearing. But if we look at the, the question is joint access. She clearly had access to it, right? I mean, get the bag, move the bag in her closet, her gun in the bag. I mean, you can't wrap, I mean, it's clearly erroneous to say that there was, that there was no joint access. I mean, it all really boils down to is whether or not there was mutual use of the bag, right? I don't think there was any evidence that there was mutual access to the bag or certainly joint control or possession of the bag. See, I think that there are two separate things. I think there's, there's, there's mutual use and there's joint access, right? And I think our officer can reasonably conclude that a gun that she claims ownership is found in the bag, that she has access to that bag. I think, and particularly when it's in her closet in an open bag, right? And so I think the real thing turns on whether or not this bag was mutually used. Am I wrong? I must be. Well, there was a, the bag was, I think, actually hanging on the, on the, I don't think it was in the closet. I think it was hanging on, on a, on a doorknob of the bedroom door, but no, I don't think there was any evidence at all presented that there was any mutual use of the bag at the hearing. And I think the judge made that specific factual finding at the hearing. And, and I don't believe her factual findings were erroneous. So it looks like I'm running out of time. But I did state our position at the beginning and I would ask this court to make findings that are to uphold the district court suppression of the drugs found in the man bag and that her factual findings were not clearly erroneous and it was also unreasonable for the officer to, to believe that Ms. Wells had apparent authority. Thank you. Thank you, Mr. Margulis. Mr. Bluestone, your rebuttal. If I could, I'd like to just pick right up where, with Judge Erickson's questions. So mutual use actually isn't required under this court's decision in Basswell. It explicitly considered a situation where there was no mutual use, no evidence of mutual use and no control over. There was only joint access to. And regarding the magistrate judge's report and recommendation, the words joint access or access aren't even mentioned in the R&R. So there's no way that there could be a factual finding where the words aren't even used. And in fact, I think that's the main deficiency in the R&R is that it didn't even consider the obvious fact that she had joint access to an open bag in her own bedroom, as Judge Erickson suggested. The Bass case also, which I flagged before, the 10th Circuit case, there was no evidence there that the girlfriend who was in her, living in her boyfriend's trailer had mutual use of bags. In fact, she had made it clear that he stored contraband in those bags and that that had nothing to do with her. So there are plenty of cases, both in this circuit and otherwise, where there's no evidence of mutual use. And just again, the standard here is reasonableness. It's not whether there was evidence of mutual use. It's whether officers were reasonable in concluding that she had joint access to and control over the bag based on what they knew at the time. This analysis is a totality of the circumstances analysis, and I was not trying to imply that you had to show all three of them. I was just saying that at some point, if that's all you're hanging your hat on is at that point. I mean, I think that the joint access piece is just, it's hard to see how, if it's your gun in a bag hanging around your bedroom, that you don't have some access to it, or an officer can't reasonably believe that you have some access to it. Correct. I'm sorry. I wasn't trying to suggest that you'd framed it that way. I was just making the point that the court actually has held in the Bassville case that those things are not required. Mr. Moguero suggested that there was a need for further investigation here. I just want to point out again that this court has repeatedly rejected that. That is a line of cases from other circuits, primarily the DC and 10 circuits. I don't think that there's a circuit split here because it's a live-in lover case, and every circuit that I've seen where you have romantic cohabitants consenting to a search, that that is essentially enough barring some evidence of an attempt to conceal the item from the partner. Lastly, Chief Judge Smith, I would just point out that there was absolutely probable cause for them to get a warrant, and wanted to note that they could absolutely search for identifying information about who possessed the gun. They didn't necessarily need to be looking for what gun it was and to try and tie the gun to Williams. With that, I would ask that this court reverse the district court and remand the case to enter an order denying suppression of all of the items he tried to suppress. Thank you. Thank you, Mr. Bluestone. The court thanks both counsel for a very interesting and helpful argument this morning as we wrestle with a difficult case. We thank you both for what you've provided to us today and also for the briefing that's been submitted. We'll take the case under advisement.